IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ANTHONY E. QUINTANA,

                Plaintiff,                OPINION AND ORDER

v.

                                       18-cv-822-wmc

DANNEY WOODWARD,

                Defendant.

*Pro se* plaintiff Anthony Quintana was granted leave to proceed on a claim against defendant Danney Woodward for failing to protect him from an inmate's assault in violation of the Fourth Amendment. Subsequently Woodward filed a motion to dismiss on the ground that Quintana failed to exhaust his administrative remedies. (Dkt. #19.) For the following reasons, the court will convert Woodward's motion to dismiss into a motion for summary judgment, grant that motion, and dismiss this case without prejudice.

OPINION

As an initial matter, Woodward's motion should have been brought as one for summary judgment, since he is relying on evidence beyond the pleadings in this case. While the court has the discretion to convert the motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(c), Rule 12(d) requires the court to provide notice and an opportunity to respond to such a conversion. Here, that step is unnecessary, however, since Quintana has opposed Woodward's motion with his own evidence. *See, e.g.*, *Hudson v. Penaflor*, No. 10-cv-478, bbc, 2011 WL 13196044 (W.D. Wis. Mar. 18, 2011), *aff'd Hudson v. Penaflor*, 448 F. App'x 623, 2011 WL 5562653, at *1 (7th

Cir. Nov. 16, 2011) ("Since the parties had submitted documents outside the public record and did not dispute the facts about exhaustion, the court converted the motion to dismiss into a motion for summary judgment and granted it."); *see also Massey v. Helman*, 259 F.3d 641, 646 n.8 (failure to give parties opportunity to respond to converted motion for summary judgment appropriate if "there is nothing the litigants could have submitted to the court that would have created a genuine issue of material fact"). Accordingly, the court turns to the merits of defendant's motion.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "applies to all inmate suits." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The purpose of the exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation, *Woodford*, 548 U.S. at 88-89.

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," which includes filing grievances and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024, 1025 (7th Cir. 2002). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants, *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018), and if a prison or jail does not make administrative remedies related to a given grievance available to an inmate, then the inmate may be excused from further exhaustion under the prison's or jail's policy. *Kaba v. Stepp*, 458 F.3d

678, 684 (7th Cir. 2006); *Dole v. Chandler*, 438 F.3d 804, 812 (7th Cir. 2006) (finding that defendant could not succeed on exhaustion defense where plaintiff mailed his appeal, but it was never received). In particular, a prison or jail's failure to respond to a grievance renders a remedy "unavailable." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

When Quintana was booked at the Marathon County Jail on September 14, 2016, he received a copy of the Marathon County Jail Rules, which contained the jail's grievance policy. That policy provides as follows:

> You must first attempt to make every effort to informally resolve your complaint (i.e., general inquiry, verbal communication, etc.) informally with the staff member involved. When informal resolution is not possible, written grievances are to be submitted on the kiosk in accordance to the guidelines below:
> . . .
> i. Grievances must be submitted within 48 hours of incident.
> j. A shift lieutenant will investigate all non-emergency grievances and provide a written response within 5 days of receipt.
> k. A written appeal can be made to the Jail Administrator within 2 days of receiving a response from the shift lieutenant.
> l. The Jail Administrator will have 10 working days to respond. This decision will be final.
> m. If you are not satisfied you may write to the State Jail Inspector.

(Gerrow Decl. Ex. 1 (dkt. #21-1) 17.)

The parties agree both that Quintana received a copy of the jail's grievance policy, and there is no record that Quintana filed a grievance in compliance with the jail's policy. The assault that is the subject of Quintana's claim in this lawsuit took place the same day he was booked and received the jail policies. Thus, Woodward seeks judgment based on Quintana's failure to follow the jail's grievance policy.

Quintana raises two arguments in opposition. *First*, he argues that he did not need to file a grievance because Woodward apologized to him after the incident. Specifically,

3

he argues that the jail's grievance policy requires inmates to attempt to resolve their grievances informally, and he believed that Woodward's apology constituted an informal resolution. Of course, were that actually the case, then there would be no further dispute for this court to take up. Regardless, Woodward's apology certainly did not serve to provide the jail administration the opportunity to address Quintana's complaint that Woodward failed to protect him from harm, and Quintana does not suggest that his exchange with Woodward actually resolved Quintana's belief that Woodward acted wrongfully. Thus, while Woodward's apology to Quintana may provide evidence that that he admitted his failure to protect him from harm, it did not satisfy the exhaustion requirement under § 1997e(a).

Nor did Woodward's alleged apology render the grievance system unavailable to Quintana. *See Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (grievance process is "unavailable" if "[jail] administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Quintana has not alleged that Woodward attempted to dissuade him from complaining about what happened, nor otherwise took action in an effort to prevent Quintana from accessing grievance forms or submitting a grievance.

Second, Quintana claims that he *did* submit a grievance in September of 2016.[1] However, this argument also fails because he has not submitted evidence that his alleged grievance actually brought up Woodward's failure to protect him. To begin, Quintana has

---

[1] Of course, this second argument undermines (or at least is inconsistent with) Quintana's first, since it confirms that Woodward's action did not stand in the way of him filing a grievance about his failure to protect him from the assault.

4

not submitted a copy of his claimed September 2016 grievance. Instead, he avers that a lieutenant with the first name of "Michael" gave him a grievance form, and he submitted "requests" to jail staff about the incident and his pain. (Pl. Opp'n Br. (dkt. #23) 6.)[2] Quintana further maintains that a "woman officer" received his complaint, but no one answered it.

At best, Quintana's description of his so-called grievance is extremely vague and too imprecise to create a genuine issue of material fact, *see Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). Critically, Quintana does not expressly aver that his grievance claimed that Woodward failed to protect him from the assault, nor that he wanted medical attention for his pain, or both. This is a problem because "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. Davis*, 297 F.3d 646, 650 (7th Cir. 2002). While a grievance's failure to *name* a defendant "is not per se inadequate" to exhaust, *Jones v. Bock*, 549 U.S. 199, 219 (2007), the grievance still must provide enough information to alert jail staff about the nature of the complaint, including identifying information regarding the "target" of the grievance. *See Roberts v. Neal*, 745 F.3d 232, 235-26 (7th Cir. 2014) (grievance had "a fatal defect" because it failed "to indicate that [the defendant] was the target"; the grievance never mentioned [the defendant] by name nor provided information that should have identified him to the grievance office") (emphasis added). There is also no indication that Quintana submitted

---

[2] Although Quintana did not submit a separate declaration setting forth these factual assertions, he did swear under penalty of perjury to the truthfulness of the factual assertions in his opposition brief, which the court will accept his assertions as evidence. *See Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011) (pro se prisoner who "verified his response in opposition to the defendants' motion for summary judgment" had done enough to "make his allegations admissible").

5

his claimed grievance within the 48-hour window required by the County. Even assuming that Quintana actually did submit timely the grievance he references, without some suggestion that Quintana's grievance actually complained that *Woodward* (or someone fitting his description) failed to protect Quintana from the assault that caused his injuries, it would be unreasonable to infer that the jail had the opportunity to address Woodward's actions.

Accordingly, on this record, defendant has carried his burden to prove that Quintana failed to exhaust his administrative remedies with respect to his claim against Woodward. Therefore, the court will dismiss this lawsuit without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice).

One final note. While Quintana's opposition materials suggest he provided all of the details available to him about his attempt to file a grievance related to Woodward's failure to protect him, the court might consider reopening this matter if Quintana inadvertently omitted material details about his efforts to grieve his claim in this lawsuit. To that end, Quintana may have until February 3, 2020, to submit a declaration, dated and signed under penalty of perjury, 28 U.S.C. § 1746, that addresses the following issues:

(1) The date(s) on which he first attempted to submit grievance(s) about Woodward's failure to provide him from an inmate assault;
(2) The specific allegations he included in that grievance;
(3) The actions he took to file the grievance(s) on the above date or dates;
(4) The specific issues he raised in that grievance;
(5) To whom at the jail he gave his completed grievance form(s); and
(6) The response of jail staff, if any.

Quintana should be aware in submitting his statement, he will be subject to adverse legal consequences, should it come to light that he has submitted a knowing misrepresentation to the court. Once he submits his declaration, the court will determine if it will reopen this matter and hold a hearing to resolve the factual dispute as to whether Quintana actually filed a grievance related to Woodward's failure to protect him from another inmate's assault. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

ORDER

IT IS ORDERED that:

1) Defendant Danny Woodward's motion to dismiss is converted to a motion for summary judgment.

2) Woodward's motion for summary judgment on exhaustion grounds (dkt. #19) is GRANTED.

3) Plaintiff Anthony Quintana's claim in this lawsuit is DISMISSED without prejudice, subject to reopening if Quintana submits a declaration providing the details related to his grievance by February 3, 2020.

4) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 24th day of January, 2020.

BY THE COURT:
/s/

_____
WILLIAM M. CONLEY
District Judge

7